# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| JUSTIN R.,[1] | : | Case No. 1:24-cv-00317 |
| Plaintiff, | : : | District Judge Susan J. Dlott |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[2]

Plaintiff filed applications for Disability Insurance Benefits and Supplemental
Security Income in August 2021. Plaintiff's claims were denied initially and upon
reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge
(ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a
"disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's
request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award
of benefits or, in the alternative, for further proceedings. The Commissioner asks the
Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management
of the Judicial Conference of the United States has recommended that due to significant privacy concerns
in social security cases federal courts should refer to claimants only by their first names and last
initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file
objections to this Report and Recommendation within the specified time period.

undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since November 28, 2018. At that time, he was thirty-nine years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 35-56), Plaintiff's Statement of Errors ("SE," Doc. No. 7), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:    Plaintiff has not engaged in substantial gainful activity since November 28, 2018, the alleged onset date.
>
> Step 2:    He has the severe impairments of residual effects secondary to a history of hypertrophic cardiomyopathy with implantable cardioverter-defibrillator, obstructive sleep apnea, type II diabetes

4

mellitus, obesity, speech impairment secondary to a history of hearing loss, depression, and an anxiety disorder.

Step 3:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "(1) occasional crawling and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no concentrated exposure to temperature extremes, respiratory irritants, or humid areas; (6) no exposure to strong magnetic fields; (7) simple, routine, and repetitive one-to-three step tasks; (8) occasional contact with coworkers and supervisors; (9) no more than occasional oral communication with coworkers and supervisors; (10) no public contact; (11) no fast paced work; (12) no strict production quotas; and (13) very little, if any, change in the job duties or the work routine from one day to the next."

He is unable to perform any of his past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 6-2 at PageID 40-49.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 49-50.)

## B.    Counselor Samantha Gilliam, L.P.C.

Samantha Gilliam, L.P.C. completed a Mental Impairment Questionnaire form in January 2023. (AR, Doc. No. 6-9 at PageID 1387-90.) Counselor Gilliam indicated that she had been seeing Plaintiff for counseling sessions once or twice per month, for the past

eighteen months. (*Id.* at PageID 1387.) Counselor Gilliam referred to diagnoses of social anxiety disorder and depressive disorder, severe. (*Id.*) She also checked boxes to indicate the following signs and symptoms: appetite disturbance with weight change; sleep disturbance; mood disturbances; anhedonia or pervasive loss of interests; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; and generalized persistent anxiety. (*Id.*) According to Counselor Gilliam, Plaintiff's psychiatric condition did not exacerbate his experience of pain or any other physical symptoms. (*Id.*) Counselor Gilliam marked an "X" to indicate her opinion that Plaintiff would be off task for twenty percent or more of the time during a typical workweek due to physical and psychological problems, and that Plaintiff would be absent from work three times per month. (*Id.* at PageID 1387-88.)

When asked to assess Plaintiff's limitations in areas of work-related activities, Counselor Gilliam indicated that Plaintiff experienced extreme limitation (defined as "not able to function in this area independently, appropriately, effectively, and on a sustained basis") in the ability to work a full day without needing more than the allotted number or length of rest periods during the day. (AR, Doc. No. 6-9 at PageID 1388.) She indicated marked limitation (defined as "seriously limited ability to function in this area independently, appropriately, effectively, and on a sustained basis, but not precluded") in the ability to describe work activity to someone else and to work close to or with others without interrupting or distracting them. (*Id.*) According to Counselor Gilliam, Plaintiff was moderately limited (defined as "fair ability to function in this area independently, appropriately, effectively, and on a sustained basis") in these abilities: to ask and answer

6

questions and provide explanations; to work at an appropriate and consistent pace; to ignore or avoid distractions while working; to change activities or work settings without being disruptive; to sustain an ordinary routine and regular attendance at work; to adapt to changes; to manage psychologically-based symptoms; and to maintain personal hygiene and attire appropriate to a work setting. (*Id.* at PageID 1388-89.)

Counselor Gilliam indicated that Plaintiff's overall ability to learn, recall, or use information to perform work activities was only mildly limited, but that his overall ability to relate to and work with supervisors, coworkers, and the public was markedly limited. (AR, Doc. No. 6-9 at PageID 1389.) She indicated that Plaintiff experienced moderate limitation in the overall abilities of focusing attention on work activities, staying on tasks at a sustained rate, regulating emotions, controlling his behavior, and maintaining well-being in a work setting. (*Id.*) She opined that Plaintiff would be unable to "perform regular, full-time, competitive work (including jobs consisting of simple, routine tasks) on a sustained basis without missing work more than two times per month, being off task more than [fifteen percent] of the workday, or needing additional breaks," due to his impairments, medical appointments, and treatment. (*Id.* at PageID 1389-90.) Finally, Counselor Gilliam opined that Plaintiff experienced "pain or fatigue that would impact [his] ability to sustain or persist in activities during an eight-hour workday[.]" (*Id.* at PageID 1390.) Counselor Gilliam explained: "Per client, hypertrophic cardiomyopathy added to depression causes extreme fatigue." (*Id.*)

The ALJ concluded that Counselor Gilliam's opinions were "not persuasive." (Decision, Doc. No. 6-2 at PageID 48.) The ALJ stated that Ms. Gilliam was a licensed

7

practical counselor and so was "not an acceptable medical source." (*Id.*) The ALJ then reasoned: "Except for [Plaintiff's] hospitalization for suicidal ideations, which were of short duration, [Plaintiff's] treatment record[s] from TCN Behavioral Health show at the most, moderate level anxiety and depression, which do not support Ms. Gilliam's' [sic] assessment." (*Id.*) The ALJ explained that Counselor Gilliam "is also not a psychologist or psychiatrist, and the record contains opinions from acceptable medical sources, which contradict her assessment." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts just one error: "[T]he ALJ reversibly erred by failing to properly evaluate the treating counselor opinion for supportability as required by 20 C.F.R. §§ 404.1520c and 416.920c." (SE, Doc. No. 7 at PageID 2273.) For the reasons discussed below, Plaintiff's assertion is not well-taken and the undersigned recommends that the ALJ's decision be affirmed.

### A.    Applicable Law.

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical

9

sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R.

§ 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical

opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31,

2023).

Because they are the most important factors, the ALJ is required not only to

consider the supportability and consistency of all medical opinions in the record, but also

to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-

00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20

C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No

"specific level of detail" is required, as "the appropriate level of articulation will

necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of*

*Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023)

(Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or

any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of*

*Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022)

(Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's

decision, even if there if there is enough evidence in the record to support the decision,

where the reasons given by the trier of fact do not build an accurate and logical bridge

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.      The ALJ Did Not Reversibly Err In His Evaluation of Counselor Gilliam's Opinions.**

Plaintiff's assertion that the ALJ did not properly evaluate Counselor Gilliam's opinions is not well-taken.

As an initial matter, Plaintiff asserts that "it is not clear that the ALJ . . . understood the proper standard [for the evaluation of medical opinion evidence]." (SE, Doc. No. 7 at PageID 2279.) According to Plaintiff, the ALJ did not recite "the proper full standard, instead merely stating that he 'cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative finding(s) or medical opinion(s), including those from medical sources.'" (SE, Doc. No. 7 at PageID 2279.) This assertion is not well-taken. The ALJ cited to the applicable regulations for the evaluation of medical opinion evidence earlier in the RFC analysis. (Decision, Doc. No.

6-2 at PageID 43.) Additionally, for the reasons discussed below, the ALJ's explanation of Counselor Gilliam's opinions addresses the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(b)(2). The undersigned therefore finds that the ALJ applied the proper standard.

The undersigned also finds that the ALJ complied with the applicable regulations when he concluded that Counselor Gilliam's opinions were not persuasive. The ALJ cited Counselor Gilliam's opinions regarding marked or extreme limitations, absenteeism, and off-task behavior and explained: "Except for [Plaintiff's] hospitalization for suicidal ideations, which were of short duration, [Plaintiff's] treatment record[s] from TCN Behavioral Health show at the most, moderate level anxiety and depression, which do not support Ms. Gilliam's assessment." (Decision, Doc. No. 6-2 at PageID 48.) This explanation addresses the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(b)(2). Further, the ALJ's conclusions are supported by substantial evidence.

Plaintiff argues that the ALJ's statement that "the treatment records 'do not support' Gilliam's opinion" addressed only the consistency factor and did not address the supportability factor. (SE, Doc. No. 7 at PageID 2280 (citing Decision, Doc. No. 6-2 at PageID 48).) This assertion is not well-taken.

The supportability factor considers "the objective medical evidence and supporting explanations presented by a medical source …." 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ explained that "treatment record[s] from TCN Behavioral Health show at the most, moderate level anxiety and depression." (Decision, Doc. No. 6-2 at PageID 48 (emphasis added).) Those treatment records *included notes from Counselor Gilliam* as

12

well as from Leslie Pulver, N.P., who managed Plaintiff's medications in the Outpatient

Psychiatric Services Program. (*See* AR, Doc. No. 6-8 at PageID 922-1065; AR, Doc. No.

6-9 at PageID 1391-401; AR, Doc. No. 6-11 at PageID 2065-112, 2187-96.) Because the

ALJ compared Counselor Gilliam's opinions to her own therapy notes (which were in the

TCN Behavioral Health treatment records), he addressed the supportability factor.

      Attempting to avoid this result, Plaintiff argues that the ALJ did not adequately

address supportability because he "needed to evaluate what the source said she based her

opinions on—not simply how the opinions compared to the record evidence as a whole,

which only goes to the consistency of the medical source opinions." (SE, Doc. No. 7 at

PageID 2280.) For support, Plaintiff relies on *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-

CV-1291, 2021 WL 1697919, at \*7 n.6 (N.D. Ohio Apr. 29, 2021). (*See* SE, Doc. No. 7

at PageID 228 & Reply, Doc. No. 9 at PageID 2307.)

      Plaintiff's argument is unsupported by the text of the pertinent regulation, which

states in relevant part:

> (c)(1) *Supportability*. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or
> her medical opinion(s) …, the more persuasive the medical opinions … will
> be.

20 C.F.R. § 404.1520c(c)(1). This regulation does not limit the ALJ to reviewing only a

medical source's supporting explanations. Instead, the supportability analysis applies to

both "the objective medical evidence ***and*** supporting explanations presented by a medical

source." *Id*. (emphasis added). These categories appear to carry equal weight. There is no

bright-line rule that requires supporting explanations to exist and be addressed in every

case. *E.g., Hardy v. Comm'r of Soc. Sec.*, 2025 U.S. App. LEXIS 2834, at *18-19 (6th Cir. Feb. 6, 2025) (holding that the ALJ sufficiently addressed the supportability factor where the medical source's opinions were inconsistent with his own treatment records, without discussing any supporting explanations offered by the medical source).

Nor does *Reusel* support Plaintiff's position. That opinion merely distinguished between an ALJ's statements that a treating doctor's opinions were "not supported by the evidence" (finding that "the context makes clear" that the ALJ meant that "the evidence [in the record]" was *inconsistent* with" the doctor's opinions), and that the doctor "'did not support his opinion' regarding off-task behavior and lying down" (finding that this statement was a "'supportability' finding evaluating what [the psychiatrist] said he based his opinion on"). *Id.* at *7 n.6. The *Reusel* court did not hold that an ALJ must discuss ***both*** the objective medical evidence from a medical source ***and*** a medical source's supporting explanation in order to adequately address the supportability factor.

Here, the ALJ adequately addressed the supportability factor when he compared Counselor Gilliam's opinions to the TCN Behavioral Health treatment notes—which included Counselor Gilliam's therapy notes—and reasoned that those records showed "at the most, moderate level anxiety and depression, which do not support Ms. Gilliam's assessment." (Decision, Doc. No. 6-2 at PageID 48.) There was very little to review in the way of Counselor Gilliam's supporting explanations. As discussed above, Counselor Gilliam provided a brief explanation for only one opinion, and it referenced Plaintiff's subjective complaints and did not cite objective medical evidence. (AR, Doc. No. 6-9 at

14

PageID 1390.) Based on this record, the undersigned concludes that the ALJ adequately addressed the supportability factor.

Plaintiff also argues that the ALJ did not adequately articulate his rationale for the supportability factor. (SE, Doc. No. 7 at PageID 2280-84.) The Sixth Circuit has not identified the level of articulation required for an ALJ to adequately explain his consideration of the supportability and consistency factors. However, the Sixth Circuit has held that federal courts can conduct a meaningful judicial review even if an ALJ provides only a cursory or sparse analysis, so long as sufficient factual findings elsewhere in the decision support the ALJ's conclusion. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (ALJ did not err by explaining that a treating physician's opinion was "not consistent with the past treatment records" when analyzing the consistency factor, even though those records were listed earlier in the opinion and not listed a second time); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that the ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (relying on findings elsewhere in the decision to affirm the ALJ's step three analysis, and stating there is no need for the ALJ to "spell out every fact a second time").

Here, the ALJ provided a detailed summary of the medical records and Plaintiff's treatment for his mental impairments earlier in the RFC analysis. (Decision, Doc. No. 6-2 at PageID 45-46.) The ALJ also summarized the medical records related to Plaintiff's mental impairments in his analysis of the "paragraph B" criteria at Step Three. (*Id.* at PageID 41-42.) These summaries are sufficiently detailed for this Court to engage in a

15

meaningful review of the ALJ's decision and conclude that the ALJ adequately addressed the supportability factor. Thus, the ALJ adequately articulated his explanation of the supportability factor.

For example, the ALJ cited TCN Behavioral Health records when acknowledging that Plaintiff was diagnosed with anxiety and depression and complained of symptoms such as social anxiety, lack of motivation, concentration deficits, panic attacks, and some suicidal thinking. (Decision, Doc. No. 6-2 at PageID 45 (citing AR, Doc. No. 6-8 at PageID 922-1065; AR, Doc. No. 6-11 at PageID 2065-112, 2187-96).) For example, Counselor Gilliam's progress notes documented Plaintiff's complaints of anxiety, depression, social anxiety, and some hopeless thoughts. (*See, e.g.,* AR, Doc. No. 6-8 at PageID 940, 943, 946, 949, 952, 954, 958, 961, 964, 967, 970, 973, 976, 979, 982; AR, Doc. No. 6-9 at PageID 1391; AR, Doc. No. 6-11 at PageID 2069, 2072, 2075, 2078, 2081, 2084, 2188.) These notes also reflected findings of anxious and depressed moods, a blunted affect, and hopeless thoughts on some occasions. (AR, Doc. No. 6-8 at PageID 939-40, 942-43, 945-46, 951-52, 954-55, 949, 957-58, 960-61, 963-64, 967, 969-70, 972-73, 976, 981-82, 987; AR, Doc. No. 6-11 at PageID 2068-69, 2071-72, 2074-75, 2077-78, 2080-81, 2083-84, 2188.)

The ALJ compared this evidence to many normal findings documented in the record, including intact or good memory, normal concentration, good eye contact, a cooperative attitude, normal speech, and normal psychomotor activity. (Decision, Doc. No. 6-2 at PageID 41-42, 45-46.) The ALJ cited Counselor Gilliam's progress notes, in addition to the psychiatric medication management progress and other treatment notes,

16

when he concluded that "[Plaintiff's] treatment notes consistently indicate that the claimant has fair insight and fair judgment." (Decision, Doc. No. 6-2 at PageID 42, 45-46 (citing, among others, AR, Doc. No. 6-8 at PageID 937, 940, 943, 946, 949, 952, 955, 958, 961, 967, 970, 973, 976, 979, 982, 988; AR, Doc. No. 6-11 at PageID 2066, 2069, 2072, 2075, 2078, 2081, 2084, 2188).) Counselor Gilliam's notes documented some euthymic moods or a full-ranged affect. (*See, e.g.,* AR, Doc. No. 6-8 at PageID 936- 937, 940, 943, 946, 949, 952, 958, 961, 979.) Additionally, Counselor Gilliam consistently documented normal behavior, normal speech, a cooperative attitude, normal thought processes, normal thought content, and normal cognition. (*See, e.g.,* AR, Doc. No. 6-8 at PageID 936-37, 942-43, 945-46, 951-52, 954-55, 957-58, 963-64, 966-67, 969-70, 972-73, 975-76, 978-79, 981-82; AR, Doc. No. 6-11 at PageID 2068-69, 2071-72, 2074-75, 2077-78, 2080-81, 2083-84, 2187-88.) The ALJ concluded that the balance of the evidence showed no more than moderate impairment in the "paragraph B" areas of functioning. He found that Plaintiff was limited "to only simple, routine, and repetitive one-to-three step tasks, with additional limitations to work pace, interaction with others, including occasional oral communication, and work stress." (Decision, Doc. No. 6-2 at PageID 41-42, 46.)

Plaintiff relies on two cases to argue that "it is not sufficient that the ALJ previously provided an extensive review of the record evidence before discussing the opinions" regarding supportability. (SE, Doc. No. 7 at PageID 2283 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. 2021) and *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-410, 2021 WL 4905438, at *4 (S.D. Ohio Oct. 21,

17

2021), *report and recommendation adopted*, No. 3:20-CV-410, 2021 WL 5235326 (S.D. Ohio Nov. 10, 2021)).) Both cases are distinguishable.

The ALJ in *Hardy* supported his conclusion that a treating psychiatrist's opinion was unpersuasive by stating: "[I]t lacked support in Dr. Carey's own contemporaneous treatment documentation or elsewhere in the extensive record." 554 F. Supp. 3d at 906. Further, to discount a family physician's opinion, the ALJ wrote: "As detailed above, Dr. Trostinkaia's clinical examination reports include few musculoskeletal findings, and none supporting effectively requiring claimant to lie down for a significant portion of the work day." *Id.* at 907. The *Hardy* court found that although the ALJ's summary of the medical evidence "included both supportive and contradictory information," it did "little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Id.* (citation omitted). The court further stated that the ALJ "did not explain why she chose to accept the findings that undercut the opinions and to reject the findings that supported them." *Id.*

The facts in *Hardy* are materially different from the facts in this case. Here, the ALJ did not merely summarize the medical evidence and then provide a one-sentence explanation of his conclusion regarding supportability. Instead, the ALJ compared the normal and abnormal findings and explained why he found that Plaintiff's mental impairments caused no more than moderate impairment in the "paragraph B" areas of functioning, and why he included certain mental limitations in the RFC. (Decision, Doc. No. 6-2 at PageID 41-43, 45-46.) Then, in his analysis of Counselor Gilliam's opinions, he referenced this evidence and his prior conclusion that Plaintiff's depression and

18

anxiety were only moderate in severity. (*Id.* at PageID 48.) He further relied on his
review of the evidence and conclusion about moderate severity to discount Counselor
Gilliam's opinion that Plaintiff experienced marked and extreme limitations and would
be absent from work three times per month and off task for twenty percent of the time.
(*Id.* at PageID 48.) The undersigned finds that the ALJ's explanation provides "sufficient
rationale for a reviewing adjudicator or court." *Hardy*, 554 F. Supp. 3d at 907.

     *Miles* is also distinguishable. The ALJ in that case addressed only the consistency
factor when evaluating the state agency reviewing psychologists' opinions and did not
address the supportability factor. 2021 WL 4905438, at *4. The court found that the
ALJ's prior recitation of Plaintiff's medical record did "not cure [that] deficiency." *Id.* at
*5. But here, the ALJ did address the supportability factor, as discussed above. Again, the
undersigned finds that the ALJ's explanation is sufficient to "provide a coherent
explanation of his reasoning." *See White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-
JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021).

     In sum, the ALJ addressed both the supportability and consistency factors when he
evaluated Counselor Gilliam's opinions, and his explanation of these factors is sufficient
to satisfy the applicable regulations.

     Additionally, the ALJ relied on substantial evidence to support his conclusion that
Counselor Gilliam's opinions were not persuasive. Although the record does contain
some objective and clinical medical findings that arguably support Counselor Gilliam's
opinions, the ALJ acknowledged and evaluated these findings in his decision. The ALJ
compared these findings to contradictory examination findings and concluded that the

balance of the evidence did not support Counselor Gilliam's opinions. Substantial evidence supported the ALJ's conclusion.

In sum, because the ALJ complied with the applicable regulations and substantial evidence supports the ALJ's analysis of the supportability factor, the ALJ's decision should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 7) be OVERRULED;

2.  The Court AFFIRM the Commissioner's non-disability determination; and

3.  The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a

memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).